IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL P. MCCONNELL,                    )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )       CIVIL ACTION NO. 3:2009-44
                                        )
MICHAEL J. ASTRUE,                      )       JUDGE KIM R. GIBSON
COMMISSIONER OF SOCIAL                  )
SECURITY,                               )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION AND ORDER OF COURT

GIBSON, J.

### I. SYNOPSIS

This matter comes before the Court on the parties' cross-motions for summary judgment,
which have been filed pursuant to Federal Rule of Civil Procedure 56. (Doc. Nos. 12 & 17.) The
Court has jurisdiction in this case pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the
standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the Defendant's motion
for summary judgment (Doc. No. 17) will be denied, and the Plaintiff's motion for summary
judgment (Doc. No. 12) will be denied to the extent that it requests an award of benefits but granted
to the extent that it seeks a vacatur of the decision of the Commissioner of Social Security
("Commissioner"), and a remand for further administrative proceedings. In accordance with the

fourth sentence[1] of § 405(g), the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings.

## II. PROCEDURAL HISTORY

Plaintiff Daniel P. McConnell ("McConnell") protectively applied for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f] on January 7, 2005, alleging that he was statutorily "disabled." (R. at 24.) The application was administratively denied on June 2, 2005. (R. at 28.) McConnell apparently took no further action with respect to that application.[2]

McConnell protectively filed a new application for SSI benefits on January 12, 2006, alleging disability as of January 20, 2004. (R. at 10, 26, 43, 198-99.) The application was initially denied on April 24, 2006. (R. at 33.) McConnell responded on June 30, 2006, by filing a timely request for an administrative hearing. (R. at 38.) On March 23, 2007, a hearing was held in Altoona, Pennsylvania, before Administrative Law Judge Patricia Henry (the "ALJ"). (R. at 196.) McConnell, who was represented by counsel, appeared and testified at the hearing. (R. at 200-17.) Testimony was also taken from Mitchell Schmidt ("Schmidt"), an impartial vocational expert. (R. at 217-23.) In a decision dated April 13, 2007, the ALJ determined that McConnell was not "disabled" within the meaning of the Act. R. pp. 7-19. The Appeals Council denied McConnell's

---

[1] The fourth sentence of 42 U.S.C. § 405(g) provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

[2] The ALJ's opinion did not specifically reference McConnell's first application, and the record contains no evidence that McConnell continued to pursue that application after the initial denial. (R. at 10.)

2

request for review on December 18, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 3.) McConnell commenced this action on February 20, 2009, seeking judicial review of the Commissioner's decision. (Doc. Nos. 1 & 3.) McConnell and the Commissioner filed motions for summary judgment on July 20, 2009, and August 20, 2009, respectively. (Doc. Nos. 12 & 17.) These motions are the subject of this memorandum opinion.

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

3

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not

4

working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

5

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. THE ALJ'S DECISION

In her decision, the ALJ determined that McConnell had not engaged in substantial gainful activity subsequent to his alleged onset date. (R. at 12.) McConnell was found to be suffering from a personality disorder, a panic disorder, anxiety, depression, acid reflux, and hypertension. (R. at 12.) His personality disorder, panic disorder, anxiety, and depression were deemed to be "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii), while his acid reflux and hypertension were deemed to be "non-severe." (R. at 12.) The ALJ concluded that McConnell's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. at 13.)

In accordance with 20 C.F.R. § 416.945, the ALJ assessed McConnell's residual functional capacity as follows:

> After consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work with no exertional limitations which requires no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes and which requires no more than occasional interaction with supervisors, coworkers, and the general public.

6

(R. at 13.) McConnell had past relevant work experience as a welder. (R. at 18.) Schmidt testified that this job was classified as a "skilled" job at the "heavy" level of exertion.[3] (R. at 220.) It was determined that McConnell could not return to his past relevant work, since he was deemed to be capable of engaging in only "unskilled" work. (R. at 18.)

McConnell was born on November 30, 1968, making him thirty-five years old as of his alleged onset date and thirty-eight years old as of the date of the ALJ's decision. (R. at 18, 43, 200.) He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). He had the equivalent of a high school education and was also able to communicate in English. (R. at 18, 200); 20 C.F.R. § 416.964(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that McConnell could work as a tree planter, box bender, or garment sorter. (R. at 19.) Schmidt's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B). (R. at 221-22.)

## V. DISCUSSION

McConnell advances two basic arguments in support of his motion for summary judgment.[4] First, he contends that the ALJ should have found him to be *per se* disabled at the third step of the sequential evaluation process. (Doc. No. 13 p. 7.) Second, he asserts that the ALJ's residual

---

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 416.967(d).

[4] Although McConnell purports to raise five different issues, four of those issues relate directly to the ALJ's residual functional capacity determination, and the weight accorded by the ALJ to various medical opinions in making that determination. (Doc. No. 13 pp. 3-4.) The Court understands McConnell to challenge the findings made by the ALJ at the third and fifth steps of the sequential evaluation process. The issues in this case will be analyzed accordingly. Because several of the specific issues referenced in McConnell's brief overlap, it would be redundant for the Court to address each of them individually.

functional capacity finding was defective, thereby leading to an erroneous determination at the fifth step of the sequential evaluation process. (Doc. No. 13 pp. 11-12.) These arguments will be addressed *seriatim*.

Where a claimant is found to be *per se* disabled at the third step of the process, no residual functional capacity determination is needed. 20 C.F.R. § 416.945(a)(5)(i)-(ii) (stating that a residual functional capacity assessment is used to make determinations at the fourth and fifth steps). For this reason, it is appropriate for the Court to address the ALJ's findings at the third step before addressing her residual functional capacity finding. The Listing of Impairments describes impairments which preclude an individual from engaging in substantial gainful activity without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled, a claimant must show that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* The burden is on the claimant to present evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

The United States Court of Appeals for the Third Circuit has held that it is impermissible for an administrative law judge to summarily determine that a claimant's impairments do not meet or medically equal a Listed Impairment without identifying the specific Listing (or Listings) under

8

consideration. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). Nevertheless, an administrative law judge is not required to "use particular language or adhere to a particular format" in conducting his or her analysis. *Jones*, 364 F.3d at 505. In order to impugn an administrative law judge's analysis, a claimant must either identify a Listing that was not (but should have been) considered or point to evidence ignored or overlooked by the administrative law judge that would have warranted a finding of *per se* disability under the Listings that were considered. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007).

McConnell argues that the ALJ should have found him to be *per se* disabled under Listings 12.04 and 12.06. (Doc. No. 13 pp. 7-8.) In her decision, the ALJ pointed out that no medical source of record had expressed the view that McConnell was *per se* disabled. (R. at 13.) She went on to conclude that McConnell's impairments did not meet or medically equal any of the impairments described in the subheadings under Listing 12.00. (R. at 13.) McConnell makes no attempt to explain the precise basis for his belief that his impairments equaled Listings 12.04 and 12.06. Indeed, his argument concerning the ALJ's determination at the third step of the process is interwoven with a more generalized discussion about the ALJ's residual functional capacity finding. (Doc. No. 13 pp. 7-11.) He makes no direct reference to the specific criteria enumerated in Listings 12.04 and 12.06. This superficial argument constitutes a waiver of the issue. *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D.Colo. 1999). The ALJ's analysis was sufficiently detailed to provide for meaningful judicial review. *Poulos*, 474 F.3d at 93; *Jones*, 364 F.3d at 505. Since McConnell fails to articulate a coherent argument for impugning the ALJ's step-three finding, no further discussion of this issue is necessary. Given that a remand for further proceedings is required for other reasons,

however, McConnell remains free to advance any arguments that he may have concerning Listings 12.04 and 12.06 before the Commissioner.

The remaining arguments in McConnell's brief all relate, in one form or another, to the ALJ's residual functional capacity determination. (Doc. No. 13 pp. 7-14.) These arguments can only be addressed by reference to the medical evidence contained in the record. From December 11, 1997, through December 20, 1997, McConnell was hospitalized at the St. Francis Medical Center ("St. Francis") because of a panic disorder and depression. (R. at 122-23.) He complained of increased crying, sadness, seclusion and weight loss. (R. at 122.) The record of McConnell's inpatient treatment contains the following observations from Dr. Dennis Wayne, McConnell's attending physician:

> The patient was very interested in getting help. He wanted to work with treatment staff. The patient was most concerned about his panic attacks and stated that when he did work he worried about how he was getting to work, how long it was going to take him and then he worried when he got to work about what he had to do and constantly was in a panic about things he had no control over.

(R. at 122.) It was determined that McConnell was suffering from a panic disorder with agoraphobia, a generalized anxiety disorder, a dysthymic disorder, and possible alcohol dependence. (R. at 123.) The documentary record indicates that McConnell stopped working on October 15, 2001, after sustaining a work-related injury. (R. at 52.) At the hearing, however, McConnell testified that he could not remember when he had stopped working. (R. at 202.) He was not able to describe the nature of his work-related injury, nor was he able to explain why he had chosen

January 20, 2004, as his alleged onset date.[5] (R. at 202.)

On December 28, 2004, Dr. Ralph Crawford, Jr., McConnell's primary care physician, signed a statement indicating that McConnell was temporarily disabled, and that this disability was expected to last until December 30, 2005. (R. at 126.) Panic attacks, anxiety and depression were listed as the reasons for McConnell's alleged disability. (R. at 126.) McConnell signed a statement declaring that his panic attacks and depression had caused "dizziness, disorientation, and loss of balance." (R. at 127.)

Dr. Kim Foster performed a consultative psychological evaluation of McConnell on May 3, 2005, in connection with McConnell's first SSI application. (R. at 129-34.) McConnell apparently told Dr. Foster that he had both physical and mental impairments. (R. at 129.) He stated that he and his wife were getting divorced because his wife could no longer tolerate the behaviors associated with his mental condition. (R. at 129.) The record of Dr. Foster's evaluation indicates that a "horrific motorcycle accident" during the summer of 1998 had caused McConnell to suffer contusions, a broken leg, and a severe concussion. (R. at 130.) McConnell complained of memory problems attributable to the head injuries that he had sustained on that occasion. (R. at 130.) He also stated that L.B. Foster & Co., his most recent employer, had fired him while he was undergoing rehabilitation to recover from a work-related hand injury. (R. at 130.)

In a written evaluation dated May 18, 2005, Dr. Foster reported that McConnell had a "slight" degree of limitation in his abilities to understand, remember and carry out short, simple

---

[5] On May 3, 2005, McConnell told Dr. Kim Foster that L.B. Foster & Co., his most recent employer, had terminated his employment while he was undergoing rehabilitation to recover from a work-related hand injury. R. p. 130.

11

instructions and to interact appropriately with supervisors, co-workers and members of the general public. (R. at 133.) Dr. Foster further opined that McConnell had a "moderate" degree of limitation in his abilities to understand, remember and carry out detailed instructions, to make judgments concerning simple work-related decisions, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 133.) At the time of the evaluation, McConnell was not being treated by a mental health professional. Dr. Foster stated that McConnell's prognosis would be better if he were "regularly in treatment with a psychiatrist and a therapist who could coordinate treatment." (R. at 132.)

Dr. Richard Heil, a nonexamining medical consultant, opined on May 31, 2005, that McConnell's activities of daily living were "mildly" restricted, and that his maintenance of social functioning, concentration, persistence, and pace was "moderately" limited. (R. at 145.) Dr. Heil also found McConnell to be "moderately" limited in his abilities to maintain attention and concentration for extended periods of time, to complete a normal workday or workweek at an acceptable pace without experiencing psychologically-based interruptions, to interact appropriately with members of the general public, to accept instructions and respond appropriately to criticism from supervisors, to travel in unfamiliar places or by means of public transportation, and to set realistic goals or make plans independently of others. (R. at 149.) In determining that McConnell was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment," Dr. Heil gave "great weight" to Dr. Foster's consultative assessment. (R. at 150-51.)

During the spring of 2005, McConnell began to experience scrotal discomfort and groin pain.

12

(R. at 153.) A testicular examination performed by Dr. Steven O. Bossinger on May 12, 2005, revealed that McConnell's scrotal contents were "unremarkable." (R. at 153.) A testicular ultrasound conducted on June 9, 2005, yielded normal results. (R. at 154.) A computed tomography ("CT") scan of McConnell's abdomen and pelvis conducted on June 13, 2005, likewise failed to reveal a medically determinable basis for McConnell's symptoms. (R. at 155-56.) Nevertheless, as of June 29, 2005, McConnell was "still experiencing some back and flank discomfort." (R. at 153.) Because the testicular ultrasound and CT scan had been "essentially unremarkable from a urologic standpoint," Dr. Bossinger began to suspect that McConnell's pain was "musculoskeletal in nature." (R. at 153.)

On April 10, 2006, Dr. Daniel Palmer performed a consultative psychological evaluation of McConnell in connection with McConnell's second SSI application. (R. at 173-78.) During the course of the evaluation, McConnell apparently denied that he had previously sustained head injuries. (R. at 174.) McConnell also denied that he had ever been discharged by an employer. (R. at 174.) These statements, of course, differed from the comments that he had previously made to Dr. Foster. Dr. Palmer described McConnell's "prognosis for positive change" as "poor," since McConnell was not actively seeking mental health treatment. (R. at 175.)

Dr. Palmer completed a mental capacity assessment form based on his examination findings. (R. at 177-78.) According to Dr. Palmer, McConnell was "markedly" limited in his abilities to understand, remember and carry out detailed instructions, to interact appropriately with supervisors and co-workers, and to respond appropriately to work pressures and changes in usual and routine work settings. (R. at 177.) Dr. Palmer found McConnell to be "extremely" limited in his ability to

13

interact appropriately with members of the general public. (R. at 177.) McConnell's ability to understand and remember short, simple instructions was found to be only "slightly" limited, while his ability to carry out such instructions was deemed to be "moderately" limited. (R. at 177.)

Dr. Sharon Becker Tarter, a nonexamining medical consultant, reported on April 19, 2006, that McConnell's mental impairments had resulted in only a "mild" degree of limitation with respect to his activities of daily living and a "moderate" degree of limitation with respect to his maintenance of social functioning, concentration, persistence and pace. (R. at 189.) Although Dr. Tarter identified no specific "marked" limitations, she found McConnell to be "moderately" limited in his abilities to carry out detailed instructions, to maintain attention and concentration for extended periods of time, to complete a normal workday or workweek at an acceptable pace without experiencing psychologically-based interruptions, to interact appropriately with members of the general public, to accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to changes in a work setting, and to travel in unfamiliar places or by means of public transportation. (R. at 192-93.)

In a written explanation of her findings, Dr. Tarter stated that there were "no restrictions in [McConnell's] abilities in regards to understanding and memory." (R. at 194.) She partially discredited Dr. Palmer's examination findings by making the following observations:

> The opinion stated within the report received 4/10/06 provided by R. Daniel Palmer, Ph.D., an examining source, has been considered. The residual functional capacity assessment is different than the opinions expressed by R. Daniel Palmer, Ph.D., in the report received 4/10/06 due to inconsistencies with the totality of the evidence in file [sic]. Some of the opinions cited in the report are viewed as an overestimate of the severity of the claimant's functional restrictions.

14

> The examining source statements in the report concerning the claimant's abilities in the areas of making occupational adjustments, making performance adjustments and making personal and social adjustments are not consistent with all of the medical and non-medical evidence in the claims folder. It appears that the examining psychologist relied heavily on the subjective report of symptoms and limitations provided by the claimant. However, the totality of the evidence does not support the claimant's subjective complaints. The psychologist's opinion is without substantial support from the other evidence of record, which renders it less persuasive. Therefore, the report submitted by R. Daniel Palmer, Ph.D., received 4/10/06, is given appropriate weight in this assessment.

(R. at 194-95.) Having expressed her disagreement with Dr. Palmer's examination findings, Dr. Tarter went on to declare that McConnell was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. at 195.)

At the hearing, McConnell testified that he was "agoraphobic," that he was afraid to leave his home, and that he was "scared to death" to be in front of the ALJ. (R. at 203.) Nevertheless, he admitted that he was not under the care of a psychiatrist, psychologist, or mental health therapist. (R. at 203-204.) McConnell could not remember when he had last been inside of a physician's office. (R. at 216-217.)

In her decision, the ALJ accorded "minimal weight" to Dr. Crawford's declaration that McConnell was temporarily "disabled" for a period of twelve months. (R. at 17.) If credited, Dr. Crawford's opinion would have warranted a finding that McConnell was entitled to SSI benefits under Title XVI, since his "disability" would have satisfied the Act's twelve-month durational requirement. *Barnhart v. Walton*, 535, U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Nonetheless, Dr. Crawford's conclusory opinion was not entitled to significant weight under the

Commissioner's regulations, since the ultimate question of disability is reserved for the Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990); 20 C.F.R. § 416.927(e)(1). Some federal courts have concluded that unsupported opinions of "disability" submitted by treating physicians are not even "medical opinions" entitled to consideration. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Luce v. Astrue*, 523 F.Supp.2d 922, 936 (S.D. Iowa 2007); *Earl-Buck v. Barnhart*, 414 F.Supp.2d 288, 293 (W.D.N.Y. 2006); *Wheat v. Barnhart*, 318 F.Supp.2d 358, 364, n.11 (M.D. La. 2004). In any event, a statement by a treating physician stating that his or her patient is statutorily "disabled" is not entitled to significant weight where the record contains no evidence that the physician possesses vocational expertise. *Wadford v. Continental Casualty Co.*, 261 F.Supp.2d 402, 412 (W.D.N.C. 2003); *Willis v. Baxter Int'l, Inc.*, 175 F.Supp.2d 819, 832 (W.D.N.C. 2001). A true "medical opinion" is an opinion specifically explaining what an individual can or cannot do in light of the functional limitations caused by his or her medically determinable impairments. 20 C.F.R. § 416.927(a)(2). The availability or unavailability of jobs consistent with a given individual's abilities and limitations is a question for a *vocational* expert rather than a question for a *medical* expert. 20 C.F.R. § 416.966(e). Hence, it was permissible for the ALJ to afford Dr. Crawford's unsupported opinion only "minimal weight." (R. at 17.)

The ALJ never explained the weight that she gave to the examination findings of Dr. Foster and Dr. Palmer. (R. at 15-18.) In determining that McConnell could engage in work activities requiring him to interact with supervisors, co-workers, and members of the general public on an "occasional" basis, the ALJ implicitly credited Dr. Foster's examination report and discredited Dr.

16

Palmer's conflicting examination report. (R. at 13, 133, 177.) Although Dr. Foster found McConnell to be only "slightly" limited in these areas of functioning, Dr. Palmer reported that McConnell was "markedly" limited in his ability to interact appropriately with supervisors and co-workers and "extremely" limited in his ability to interact appropriately with members of the general public. (R. at 133, 177.) Under the Commissioner's regulations, an "extreme" degree of limitation in a particular functional area essentially warrants a finding that an individual is precluded from engaging in *any* gainful activity implicating that area. 20 C.F.R. § 416.920a(c)(4).[6] Dr. Tarter apparently recognized that Dr. Palmer's examination report, if credited, may have resulted in a finding that McConnell was statutorily disabled. (R. at 194-95.) That is why she expressly refuted Dr. Palmer's observations. (R. at 194-95.) Despite the obvious tension between Dr. Palmer's examination report and the opinions expressed by Dr. Foster, Dr. Heil, and Dr. Tarter, the ALJ did not state why she believed Dr. Palmer's findings to be unreliable. If one were to read the ALJ's opinion without reading Dr. Palmer's examination report, he or she would most likely assume that Dr. Palmer's examination report was consistent with the ALJ's ultimate residual functional capacity determination. (R. at 15.) Such an assumption, of course, would be erroneous.

The United States Court of Appeals for the Third Circuit has consistently held that an administrative law judge must adequately explain his or her reasons for crediting one medical report

_____

[6] The Court acknowledges that interaction with members of the general public is not one of the broad functional areas explicitly referenced in 20 C.F.R. § 416.920a(c)(4). Therefore, an "extreme" limitation in this narrow area would not necessarily warrant a finding that an individual is incapable of engaging in substantial gainful activity. Nevertheless, one who is "extremely" limited in his or her ability to interact appropriately with members of the general public would be incapable of performing the duties of a job requiring "occasional" interaction with members of the general public.

over a conflicting medical report. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003);

*Fargnoli*, 247 F.3d at 41-44; *Burnett*, 220 F.3d at 121-122. In some circumstances, a piece of

evidence can be so lacking in probative value, or so overwhelmed by countervailing evidence, that

it can be implicitly rejected without explanation. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198,

203-205 (3d Cir. 2008). Dr. Palmer's examination report, however, was neither lacking in probative

value nor overwhelmed by countervailing evidence. At the time of the ALJ's decision, Dr. Palmer's

examination report was the most recent assessment of McConnell's mental limitations supplied by

an examining source. The "marked" and "extreme" limitations identified in that report were

consistent with McConnell's testimony at the hearing. (R. at 177, 203, 205-206, 213.) In rejecting

those limitations, the ALJ was required to articulate her reasons for disbelieving Dr. Palmer, thereby

providing McConnell with an opportunity to seek meaningful judicial review of the ALJ's factual

findings. *Burnett*, 220 F.3d at 121-22. Because the ALJ failed to explain how she reconciled the

competing medical reports in the record, the Court has no way of knowing whether Dr. Palmer's

examination report "was not credited or simply ignored."[7] *Cotter*, 642 F.2d at 705. For this reason,

---

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). In order for a vocational expert's answer to a hypothetical question to constitute competent evidence of the existence of jobs consistent with a claimant's residual functional capacity, the administrative law judge's hypothetical question must adequately convey to the vocational expert *all* of the claimant's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). If a credibly established limitation is not included within the hypothetical question, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-24 (3d Cir. 2002). The ALJ's residual functional capacity assessment and corresponding hypothetical question to Schmidt described an individual who could "occasionally" interact with members of the general public. (R. at 13, 221.) Dr. Palmer evidently believed that McConnell could have *no* interaction with members of the general public. (R. at 177.) Given the ALJ's failure to properly evaluate the veracity of Dr. Palmer's opinion, her finding that McConnell could "occasionally" interact with members of the general public is not "supported by substantial evidence." 42 U.S.C. § 405(g). The Commissioner has

18

the ALJ's decision is not "supported by substantial evidence." 42 U.S.C. § 405(g).

The only remaining question is whether a judicially-ordered award of benefits is proper, or whether the appropriate remedy is a remand for further administrative proceedings. An immediate award of benefits is called for only where the evidentiary record has been fully developed, and where the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). That standard is not met here. Dr. Palmer's examination report is contradicted by Dr. Foster's examination report and the consultative assessments provided by Dr. Heil and Dr. Tarter. (R. at 130-51, 173-95.) Resolving conflicts in the evidence is the prerogative of the Commissioner. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Consequently, the proper remedy is a remand for further administrative proceedings.

## VI. CONCLUSION

During the course of the upcoming administrative proceedings, it will be the responsibility of the Commissioner to resolve all relevant conflicts in the evidence. The Court expresses no opinion as to whether McConnell will be able to establish his entitlement to SSI benefits. There are, however, a few important issues that the Commissioner should keep in mind. The record contains evidence indicating that McConnell has impairments which adversely affect his memory. On May 3, 2005, McConnell told Dr. Foster that he had sustained serious head injuries in 1998. (R. at 130.) Less than a year later, on April 10, 2006, he told Dr. Palmer that he had no history of head injuries. (R. at 174.) Although McConnell was able to describe the circumstances surrounding his work-

---

not satisfied his burden of establishing the existence of jobs consistent with McConnell's residual functional capacity, since Schmidt's testimony was given in response to a hypothetical question that may not have included all of McConnell's functional limitations.

related injury and subsequent termination to Dr. Foster during the course of his first consultative examination, he had no recollection of those events when he testified at the hearing. (R. at 130, 202.) McConnell also testified that he had no idea why he had selected January 20, 2004, as his alleged onset date. (R. at 202.) These memory lapses, of course, should be considered in relation to McConnell's mental impairments. The record also contains evidence that McConnell's mental impairments may have manifested themselves in the form of physical abnormalities. (R. at 127, 129, 210.) There is no indication in the record that his scrotal discomfort and back pain were caused by his mental impairments. (R. at 153-56.) Nevertheless, the Commissioner should be sure to consider any physical limitations resulting from McConnell's impairments in determining his residual functional capacity.[8] Finally, McConnell's treatment for his mental condition has been sporadic at best. He admitted at the hearing that he was not under the care of a mental health professional. (R. at 204.) The Commissioner's regulations provide a basis for denying benefits to a claimant who refuses or fails to follow a prescribed treatment regimen. 20 C.F.R. § 416.930. Nonetheless, there are circumstances in which a claimant's refusal or failure to seek adequate treatment for his or her mental condition is directly attributable to the condition itself, thereby providing further evidence of a disabling mental impairment. *Pate-Fires v. Astrue*, 564 F.3d 935, 945-947 (8th Cir. 2009); *Sharp v. Bowen*, 705 F.Supp. 1111, 1124-1125 (W.D. Pa. 1989). It will be up to the Commissioner to consider all of these matters in light of the evidentiary record, and to determine whether McConnell is entitled to benefits under Title XVI.

---

[8] Despite McConnell's testimony concerning leg and back pain, the ALJ determined that he had no exertional limitations. (R. at 13, 210.)

Accordingly, the decision of the Commissioner will be vacated, and the case will be remanded to him for further administrative proceedings. An appropriate order follows.

**AND NOW**, this 19th day of July 2010, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff (Doc. No. 12) and the Motion for Summary Judgment filed by the Defendant (Doc. No. 17), **IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment is **DENIED** to the extent that it requests an award of benefits but **GRANTED** to the extent that it seeks a vacatur of the decision of the Commissioner of Social Security, and a remand for further administrative proceedings, and that the Defendant's Motion for Summary Judgment is **DENIED**. The decision of the Commissioner of Social Security is hereby **VACATED**, and the case is remanded to him for further proceedings consistent with the foregoing memorandum opinion.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:    All counsel of record

22